UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT BEARD,

    Plaintiff,

v.

OFFICER C. PENNINGTON,

    Defendant.

Case No. 14-cv-03128-YGR (PR)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

On June 29, 2014,[1] Plaintiff Robert Beard, a state prisoner, brings the instant *pro se* action pursuant to 42 U.S.C. § 1983, alleging an Eighth Amendment violation resulting from a May 10, 2010 incident in which he was attacked by his cell mate, inmate Hunter, during Plaintiff's previous incarceration at Salinas Valley State Prison ("SVSP"). Plaintiff seeks monetary damages.

The operative pleading is Plaintiff's original complaint (Dkt. 1), in which he alleges that Defendant SVSP Correctional Officer C. Pennington (hereinafter "Defendant") acted with deliberate indifference on May 10, 2010 by ordering Plaintiff, who is African American, to enter the cell of inmate Hunter, who is white, even after Plaintiff informed Defendant that inmate Hunter threatened to beat Plaintiff if he was celled with him. As mentioned above, inmate Hunter attacked Plaintiff that same day. The Court reviewed the complaint and found it to have raised a cognizable deliberate indifference to safety claim against Defendant.

On April 14, 2015, Defendant filed a Motion for Summary Judgment. Dkt. 21. He argues that (1) the action is barred by the applicable statute of limitations; and (2) Plaintiff failed to exhaust administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42

---

[1] The Clerk of the Court received the instant complaint on July 10, 2014. Dkt. 1 at 1. Plaintiff signed his complaint on June 29, 2014. Dkt. 1 at 6. Plaintiff declared under penalty of perjury that he submitted the complaint to jail authorities for mailing on that date. *Id.* Therefore, the Court applies the "mailbox rule" to deem the complaint constructively filed on June 29, 2014, the date it was signed. *See Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (recognizing that the mailbox rule applies to the filing of a federal civil rights complaint).

U.S.C. § 1997e(a), as to his deliberate indifference to safety claim against Defendant. *Id.* at 1. Accordingly, Defendant argues he is entitled to summary judgment. *Id.* at 1-2. Plaintiff has not filed an opposition to the motion.[2]

For the reasons outlined below, the Court GRANTS Defendant's motion for summary judgment (1) on the grounds that the action is barred by the applicable statute of limitations, and (2) based on Plaintiff's failure to exhaust administrative remedies.

## II.   DISCUSSION

### A.   Factual Background

On May 10, 2010, Plaintiff arrived at SVSP, and at around 5:00 pm, he was assigned to cell 227 along with inmate Hunter. Dkt. 1 at 11.[3] Plaintiff claims that when he tried to enter the cell, inmate Hunter told Plaintiff not to enter because inmate Hunter's gang instructed that he should not accept a black cellmate. *Id.* Inmate Hunter then "walked downstairs and told [Defendant] that he did not want a negro cell mate and that he was going to beat [Plaintiff] down if [Defendant] tried to force [Plaintiff] to be his cell mate." *Id.* Plaintiff alleges that he also informed Defendant of inmate Hunter's threats, and requested to be placed in another cell. *Id.* However, Defendant ordered Plaintiff to return to cell 227. *Id.* Plaintiff claims that Defendant told him that "he was going to mace (with pepper spray) and force [Plaintiff] inside [cell] 227 then take disciplinary actions against [Plaintiff] if [he] continue[d] to disobey [Defendant's] orders." *Id.* Plaintiff decided to return to cell 227. *Id.*

At around 6:00 pm, Defendant approached cell 227 to inform inmate Hunter and Plaintiff that they would not be cell mates and that they should pack up their property. *Id.* While Plaintiff was packing his property, inmate Hunter "ran up to [him] and began assaulting [him] upon [his] head and in [his] ribs . . . ." *Id.* Plaintiff pushed inmate Hunter away from him and crawled under

---

[2] Plaintiff's opposition to Defendant's motion for summary judgment was due no later than May 12, 2015, twenty-eight days after Defendant filed his motion. On June 23, 2015, the Court, on its own motion, granted Plaintiff an extension of time to file an opposition. Dkt. 30. The extension granted by the Court expired on July 21, 2015, and Plaintiff did not file his opposition.

[3] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Plaintiff.

2

1  the bed. *Id.* Plaintiff told inmate Hunter that he was "going to destroy his radio and his

2  television." *Id.* Inmate Hunter then "began beating on the door to speed up the cell move

3  process." *Id.*

4  At around 7:00 pm, Plaintiff and inmate Hunter were moved to different cells. *Id.* at 12.

5  Plaintiff further alleges that Defendant did not arrange for him to receive medical treatment after

6  the beating, and Defendant stated that he was "not going to file any disciplinary or criminal assault

7  charges against [inmate] Hunter because [inmate] Hunter was in the mental health program." *Id.*

8  at 8. Plaintiff claims that the "3rd Watch Medical Staff concluded wrongfully and intentionally

9  that [he] was neither injured or in pain and ignored [his] high blood pressure problem." *Id.* at 12.

### B. Background Relating to Exhaustion

Defendant has presented Plaintiff's prison records, which Defendant argues prove that Plaintiff did not pursue a grievance relating to the deliberate indifference to safety claim through all three levels of the California Department of Corrections and Rehabilitation's ("CDCR's") administrative grievance process. Dkt. 21 at 5. Defendant states as follows:

> 13. Plaintiff's prison records prove that he did not submit grievances through all three levels of CDCR's administrative grievance process concerning his claim that Officer Pennington was deliberately indifferent to his safety on May 10, 2010. (Declaration of M. Voong in Supp. of Def's Mot. Summ. Judg. (Voong Decl.) ¶¶ 6-8 and Exh. A; Medina Decl. ¶¶ 7-10 and Exhs. A-W.) Plaintiff's grievance history for Salinas Valley shows he submitted thirty-three inmate appeals between June 10, 2010 and December 10, 2013, concerning his conditions of confinement at that institution, but that none of the appeals accepted for review addressed his claim against Defendant. (Medina Decl. ¶¶ 7-10 and Exhs. A-W.)
>
> 14. On June 10, 2010, Plaintiff submitted grievance number SVSP-L-10-01488 in which he requested placement in CDCR's developmental disability program, and also stated that on May 10, 2010, a white inmate assaulted him after the two were temporarily housed together. This grievance was split and Beard's request to participate in the developmental disability program was addressed as a separate grievance, SVSP-L-10-11785. Beard's complaint about being housed with the white inmate was screened out on June 10, 2010, and he did not appeal the screen-out decision or re-submit a grievance concerning his alleged beating by a white inmate on May 10, 2010. (*Id.* ¶¶ 9-10 and Exhs. A-W.)

*Id.* Before turning to the facts relating to exhaustion in the present case, the Court first reviews the requirements of the PLRA and administrative review process applicable to California prisoners.

3

### 1. Legal Framework Relating to Exhaustion

The PLRA requires a prisoner to exhaust "available administrative remedies" before bringing an action with respect to prison conditions. 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." *Booth v. Churner*, 532 U.S. 731, 739-40 (2001). The PLRA requires *proper* exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to exhaust properly. *Id.* The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 84.

The CDCR provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

To initiate an appeal, the inmate or parolee must submit a CDCR Form 602 ("appeal" or "grievance") describing the issue to be appealed to the Appeals Coordinator's office at the institution or parole region for receipt and processing. *Id.* § 3084.2(a)-(c). The level of detail in an administrative grievance necessary to exhaust a claim properly is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The level of specificity required in the appeal is described in the California Code of Regulations as follows:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.

4

1   Cal. Code Regs. tit. 15, § 3084.2(a)(3) (emphasis added).

2       In order to exhaust available administrative remedies within this system, a prisoner must submit his complaint on CDCR Form 602 and proceed through several levels of appeal: (1) informal level grievance filed directly with any correctional staff member, (2) first formal level appeal filed with one of the institution's appeal coordinators, (3) second formal level appeal filed with the institution head or designee, and (4) third formal level appeal filed with the CDCR director or designee (i.e., "Director's level").[4] Cal. Code Regs. tit. 15, § 3084.5; *Brodheim v. Cry*, 584 F.3d 1262, 1264-65 (9th Cir. 2009). A prisoner exhausts the appeal process when he completes the third level of review. *Id.* § 3084.1(b); *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010).

    The initial grievance must be filed within 15 working days of the action or event being protested, and inmates must seek review at each successive level within 15 working days of receiving an adverse decision at a lower level. Cal. Code Regs. tit. 15, § 3084.6(c).[5] The appeals coordinator can reject or "screen out" an appeal for various reasons, including failure to comply with the 15 working-day time limit, omission of necessary supporting documents, or duplication of a previous appeal. *Id.* § 3084.3(c). When the grievance is not rejected or screened out, the inmate must pursue the grievance through each level of review to exhaust remedies. *Id.* § 3084.5. A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." *Id.* § 3084.1(b).

### 2. Summary of Plaintiff's Grievances

    In his verified complaint, Plaintiff claims that he exhausted administrative remedies as to the deliberate indifference to safety claim raised in his complaint by checking the box labeled

---

[4] Under the regulations, as amended effective January 28, 2011, the informal grievance level has been omitted and there are now only three levels: first level appeal, second level appeal, and third level appeal. *See* Cal. Code Regs. tit. 15, § 3084.7. As further explained below, Plaintiff's relevant grievance was allegedly submitted before January 28, 2011; therefore, the amended regulations were not yet in effect.

[5] The 15-day deadline pursuant to section 3084.6(c) was in effect during the time frame Plaintiff's relevant grievance was filed. However, under the amended regulations, inmates now have "30 calendar days" to submit a grievance (using the prescribed CDCR Form 602) from the "occurrence of the event or the decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b)(1).

5

"Yes" when asked whether he filed a grievance before bringing this action in federal court. Dkt. 1 at 5. When asked whether the appeal was "formal" or "informal," Plaintiff checks the box labeled, "Both." *Id.* When asked to indicate the "result," Plaintiff states that it was "DENIED." *Id.* Plaintiff states that he "appeal[ed]" the denial by checking the box labeled "Yes." *Id.* And again when asked to indicate the "result" of the appeal, Plaintiff states that it was "DENIED."[6] *Id.* Plaintiff does not support his conclusory allegation by attaching any evidence of the alleged appeal that was "denied" at "both" the formal and informal levels.

In contrast, Defendant has submitted evidence that between June 5, 2010 and December 10, 2013, Plaintiff submitted 33 inmate appeals that were accepted for review. Medina Decl. ¶¶ 7, 9, Exs. A-W. Out of the 33 grievances, only one—log no. SVSP-L-10-01488—related to May 10, 2010 incident. Medina Decl. ¶ 9, Ex. B. Therefore, the Court shall elaborate on only that one relevant appeal below.

### 3. Log No. SVSP-L-10-01488

The record shows that on June 5, 2010, Plaintiff filed a CDCR 1824 or "Reasonable Modification or Accommodation Request" under the Americans with Disabilities Act ("ADA") (also known as an ADA appeal) —which was given log no. SVSP-L-10-01488—relating to the March 10, 2010 incident. Medina Decl. ¶ 9(a). The "modification or accommodation" Plaintiff specifically requested was "[p]lacement in the Developmental Disability Program [("DDP")]." Medina Decl., Dkt. 22-1 at 7.

In this ADA appeal, Plaintiff specifically stated as follows:

> DESCRIPTION OF DISABILITY:
>
> Because of the severe headaches and pains that plague[] my entire body I am severely limited in my ability to tend to my daily activities and legal responsibilities.
>
> WHAT VERIFICATION DO YOU HAVE OF YOUR DISABILITY:
>
> No verification is required when requesting D.D.P. Placement.

---

[6] Plaintiff indicates the same answers relating to his grievances as to "Claim One" and "Claim Two." Dkt. 1 at 5. However, as explained above, the Court only found that the complaint stated one cognizable claim of deliberate indifference to safety.

6

*Id.* Under the section entitled "DESCRIBE THE PROBLEM," Plaintiff relates the circumstances leading to the aforementioned assault by inmate Hunter on March 10, 2010. *Id.* at 7, 10. Plaintiff adds:

> From thereon, in the past 3 weeks, I have received no type of medication or any type of treatment, coupled with the fact that I have no . . . paper, ink pens and other resources . . . I am unable to tend to my appellate responsibilities in pro per.

*Id.* at 11. Handwritten on top right of the front page of the ADA appeal form are the log number, "SVSP-L-10-01488," as well as the following: "SPLIT & CONVERTED TO 602 & 602HC NON-ADA." *Id.* at 7. Attached to the ADA appeal form is a 602 appeal form with the following handwritten under the repeated words, "SPLIT & CONVERTED TO 602 & 602HC FROM 1824 NON-ADA" and "SEE ATTACHED 1824":

> CCII SMITH CONTACTED LT. MOJICA REGARDING THE I/M'S CONCERNS NOTED IN THE APPEAL. AFTER THE INTERVIEW LT. MOJICA ADVISED CCII SMITH THE I/M WAS REHOUSED AND HAD NO FURTHER ISSUES. MOJICA NOTED A M/H REFERRAL WAS COMPLETED ON 6-8-10 BY C/O GERISCH & WILL BE FOLLOWED UP BY C/O ARREDONDO. TODAY I/M DID NOT WISH TO PURSUE ANY OF THE APPEAL ISSUES. S/P

*Id.* at 8.

On June 10, 2010, Plaintiff was sent a letter from the SVSP Appeals Coordinator, entitled "RE: Screening at the FIRST level," stating:

> You have failed to reasonably demonstrate that the issue you are appealing adversely affects your welfare, pursuant to CCR 3084.1(a).
>
> Upon interview of the inmate it was discovered the inmate no longer has housing concerns. Therefore, this portion of the split appeal has been screened out. The inmate is advised his appeal was converted to a 602HC to address his request for DDP placement.[7]

*Id.* at 6 (footnote added). At the bottom of the letter, there are further instructions, stating:

> Please make the changes or corrections requested and resubmit the original appeal within the fifteen working days. Once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the

---

[7] The record shows that Plaintiff's request for DDP placement was addressed in a separate grievance, log no. SVSP-L-10-11785. Medina Decl. ¶ 9(a).

7

cancellation is granted.

*Id.* There is nothing in the record showing that Plaintiff challenged or sought review of the June 10, 2010 determination. Nor did Plaintiff choose to resubmit SVSP-L-10-01488, as he was instructed at the bottom of both the June 10, 2010 letter from the SVSP Appeals Coordinator. *See* Medina Decl. ¶ 9, Dkt. 22-1 7-11. There is also nothing in the record showing that Plaintiff pursued SVSP-L-10-01488 to the third level of review. *See* Voong Decl. ¶ 8, Dkt. 24-1 at 2.

### C. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

A district court may only consider admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the motion for summary judgment, Defendant has presented declarations from SVSP Appeals Coordinator E. Medina, Correctional Case Records Manager Kasandra Staves, and Acting Chief of the Office of Appeals M. Voong. Dkts. 22-24. Meanwhile, Plaintiff has filed his verified complaint (Dkt. 1). Because Plaintiff has not filed an opposition to the pending motion for summary judgment, the Court construes his complaint as an affidavit under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

### D. Analysis Relating to Statute of Limitations

#### 1. Statute of Limitations Generally

Section 1983 does not contain its own limitations period. The appropriate period is that of the forum state's statute of limitations for personal injury torts. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985), *partially superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-78 (2004). In California, the general residual statute of limitations for personal injury actions is the two-year period set forth at California Civil Procedure Code § 335.1 and is the applicable statute in section 1983 actions. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). It is federal law, however, that determines when a cause of action accrues and the statute of limitations begins to run in a section 1983 action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *See TwoRivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1999).

A federal court must give effect to a state's tolling provisions. *See Hardin v. Straub*, 490 U.S. 536, 543-44 (1989); *Marks v. Parra*, 785 F.2d 1419, 1419-20 (9th Cir. 1986). California Civil Procedure Code § 352.1 recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." Cal. Civ. Proc. Code § 352.1(a). A prisoner serving a term of life with the possibility of parole is considered a prisoner serving a term of less than life. *Martinez v. Gomez*, 137 F.3d 1124, 1126 (9th Cir. 1998). The tolling is not indefinite, however, the disability of imprisonment delays the accrual of the cause of action for a maximum of two years. *See* Cal. Civ. Proc. Code § 352.1(a). Tolling under section 352.1 is triggered by the plaintiff's arrest and incarceration. *See Elliott v. City of Union City*, 25 F.3d 800, 802-03 (9th Cir. 1994).

#### 2. Statutory Tolling Pursuant to California Code of Civil Procedure § 352.1

Plaintiff's cause of action arose on May 10, 2010, the date he alleged Defendant failed to act to prevent inmate Hunter's attack on Plaintiff. Under California Code of Civil Procedure § 352.1, the two-year statute of limitations applicable to Plaintiff's claim should be tolled for another two years because Plaintiff is serving twenty-five years to life for his most recent

conviction offense, *see* Staves Decl., Ex. A; *see also* Cal. Civ. Proc. Code § 352.1(a), (c), and his life sentence with the possibility of parole is considered a prisoner serving a term of less than life, *see Martinez*, 137 F.3d at 1125-26.  Therefore, Plaintiff is entitled to the benefit of statutory tolling as prescribed in section 352.1.  *See Elliott*, 25 F.3d at 802-03.

After two years of statutory tolling for incarceration, the two-year statute of limitations on Plaintiff's claim began to run on May 10, 2012 and ended on May 10, 2014.  Despite the fact that Plaintiff was allotted *four* years to file his claim, he failed to do so until June 29, 2014—50 days after the two-year statute of limitations expired.  Plaintiff's deliberate indifference to safety claim against Defendant, therefore, is barred by the statute of limitations unless Plaintiff can show that he is entitled to an extension of the limitations period on equitable grounds below.

### 3. Extending Limitations Period on Equitable Grounds

There are two doctrines which may apply to extend the limitations period on equitable grounds—equitable tolling and equitable estoppel.  *Lukovsky v. San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).  Equitable tolling focuses on "whether there was excusable delay by the plaintiff: 'If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'"  *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002).  "Equitable estoppel, on the other hand, focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'"  *Lukovsky*, 535 F.3d at 1051 (citing *Johnson*, 314 F.3d at 414).

As explained above, the record shows that Plaintiff filed one relevant grievance relating to the deliberate indifference to safety claim at issue prior to filing the instant federal action.

Under California law, equitable tolling "'reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'"  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting *Addison v. State of California*, 21 Cal. 3d 313, 317 (1978)).  Thus, in an appropriate case, the statute of limitations might be tolled for time spent pursuing a remedy in another forum before filing the claim in federal court.  The California Supreme Court in

*Lantzy v. Centex Homes*, explained the effect of equitable tolling on the statute of limitations:

> . . . the effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred.

31 Cal. 4th 363, 370-71 (2003), *as modified* (Aug. 27, 2003).

Defendant concedes that, for the purposes of the motion for summary judgment, Plaintiff is "entitled to equitable tolling while he pursued his administrative remedies through the CDCR's inmate grievance system." Dkt. 21 at 8. However, Defendant argues that even if Plaintiff is provided the benefit of the entire time for which equitable tolling applies, his deliberate indifference to safety claim remains time-barred. *Id.*

Plaintiff can claim that he was attempting to lessen the extent of his injuries by pursuing his administrative remedies for ten days—from June 5, 2010 (the date he filed SVSP-L-10-01488) until June 10, 2010 (the date it was screened out). In order to incorporate the effect of equitable tolling as explained by the California Supreme Court in *Lantzy*, 31 Cal. 4th at 370-71, this Court re-states its calculation relating to the statute of limitations deadline. *See supra* at 8-9. The Court has determined above that Plaintiff's cause of action accrued on May 10, 2010. *Id.* After two years of statutory tolling for incarceration, the two-year statute of limitations on Plaintiff's claim began to run on May 10, 2012 and ended on May 10, 2014. *Id.* Pursuant to *Lantzy*, no matter when it took place, the 10 days tolled interval is "tacked onto the end of the limitations period," thus extending Plaintiff's deadline for suit by the entire length of time during he was pursuing his administrative filings. *See id.* Thus, in accordance with *Lantzy*, the Court tacks on 10 days of equitable tolling after the May 10, 2014 deadline, and Plaintiff would have had until May 20, 2014 to file a timely federal complaint. Plaintiff did not constructively file his federal complaint until June 29, 2014—40 days after the statute of limitations ended. Thus, despite granting Plaintiff equitable tolling during the time he pursued his administrative filings, the instant complaint is still untimely by 40 days. Accordingly, Plaintiff's complaint is DISMISSED with prejudice as time-barred, and Defendant's motion for summary judgment is GRANTED. Dkt. 21.

### E.  Analysis Relating to Exhaustion of Administrative Remedies

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172; *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden of proof remains with defendants, however. *Id.* "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166.

As explained above, Defendant's alternative argument is that Plaintiff did not exhaust his administrative remedies as to his deliberate indifference to safety claim against Defendant. Dkt. 21 at 8-11. Therefore, Defendant argues that he is entitled to summary judgment based on Plaintiff's failure to exhaust his administrative remedies as to his deliberate indifference to safety claim. *Id.* at 11.

In support of his argument, Defendant submits a declaration by M. Voong, Acting Chief of the Office of Appeals ("OOA")[8] at the CDCR. According to Acting Chief Voong, the OOA screens all incoming inmate appeals before the appeals receive a Director's level decision. Voong ¶ 4. Specifically, the OOA determines whether an appeal complies with agency regulations, and may return an appeal to an inmate if it finds the appeal was not timely filed, fully exhausted or complete. *Id.* The OOA keeps an electronic record of each inmate administrative appeal that has proceeded through the Director's level of review, including a record of each administrative appeal that was received by the OOA but was rejected or screened out since 2000. *Id.*

Appeals that are screened out can be categorized either as a rejection or a cancellation. *Id.* ¶ 5. A rejected appeal is one that has been returned to the inmate with instructions to correct a deficiency prior to further consideration. *Id.* Because the inmate has the ability to resubmit the

---

[8] The OOA was formerly named the Inmate Appeals Branch. Voong Decl. ¶ 1.

1    appeal, the rejection "screen out" letter is not appealable. *Id.* A cancelled appeal, by contrast,

2    informs the inmate that his appeal has been cancelled and may not be resubmitted; a separate

3    appeal, however, can be filed on the cancellation decision. *Id.*

4          Attached to Acting Chief Voong's declaration is a copy of the OOA computer printout

5    report showing each appeal that was submitted through December 30, 2014 by Plaintiff to the

6    Director's level of review, and whether the appeal was received, accepted, or screened out at the

7    Director's level. Voong Decl. ¶ 6; Ex. A. The report lists only one Director's level appeal from

8    SVSP, log no. SVSP-10-02643, which is unrelated to the claim that is the subject of the instant

9    action.[9] *Id.* Meanwhile, the relevant grievance, SVSP-L-10-01488, is not listed on the report as

10   an appeal that was submitted and accepted to the Director's level of review. *Id.* Defendant has

11   also submitted a declaration by SVSP Appeals Coordinator E. Medina, and attached to this

12   declaration is a copy of a grievance activity report, generated on March 27, 2015, that identifies

13   each grievance that Plaintiff submitted to the SVSP appeals office between June 5, 2010 and

14   December 10, 2013, and includes all non-medical grievances that Plaintiff submitted concerning

15   his conditions of confinement at SVSP. Medina Decl. ¶ 7, 9, Ex. A. The grievance activity report

16   also indicates the level or levels of review to which each grievance was submitted. Medina Decl.

17   ¶ 7. The report shows the Plaintiff submitted 33 grievances during that time period. *Id.* The

18   report lists the relevant appeal, SVSP-L-10-01488, in which Plaintiff raised the deliberate

19   indifference to safety claim that is the subject of the instant action, and shows such appeal was

20   screened out on June 10, 2010. *Id.* ¶ 9(a), Exs. A, B, C. Defendant argues that Plaintiff "did not

21   re-submit the grievance or challenge the screen-out decision as he was required to do under

22   CDCR's administrative grievance process to exhaust administrative remedies." Dkt. 21 at 10.

23         Defendant has met his ultimate burden as the moving party by setting forth evidence to

24   demonstrate Plaintiff's non-exhaustion as to his deliberate indifference to safety claim. The

25   undisputed evidence shows that SVSP-L-10-01488 was initially screened out on June 10, 2010

---

[9] SVSP-10-02643 concerned a rules violation report that Plaintiff received for battery on a peace officer, and it was denied at the third level of review on April 5, 2011. Medina Decl. ¶ 9(b), Ex. D.

because SVSP-L-10-01488 Plaintiff "failed to reasonably demonstrate that the issue [he was] appealing adversely affect[ed] [his] welfare, pursuant to CCR 3084(a)." Dkt. 22-1 at 6. Specifically, the June 10, 2010 determination states that upon being interviewed Plaintiff "no longer ha[d] housing concerns." *Id.* Therefore, the portion of SVSP-L-10-01488 relating to the deliberate indifference to safety claim was "screened out." *Id.* And, as explained above, Plaintiff did not challenge the June 10, 2010 determination. Nor did he make any attempts to resubmit this portion of SVSP-L-10-01488. Thus, Plaintiff's initial filing of SVSP-L-10-01488 did not properly exhaust his administrative remedies. *See Woodford*, 548 U.S. at 90 (proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules"). If Plaintiff wanted to challenge the June 10, 2010 determination, he was advised that he could resubmit the original appeal, *see* Medina Decl., Dkt. 22-1 at 6, but he did not do so. Because the "rejection" of an appeal "does not exhaust administrative remedies," *see* Cal. Code Regs. tit. 15, § 3084.1(b), the evidence submitted by Defendant satisfies the initial burden of proving that there were available administrative remedies for Plaintiff, and that Plaintiff failed to exhaust those remedies properly, *see Albino*, 747 F.3d at 1172.

Defendant has adequately shown that there were available administrative remedies that Plaintiff did not fully exhaust. As such, the burden shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1166. Improper screening of a prisoner's administrative grievances may excuse a failure to exhaust. *See Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010). The prisoner must demonstrate "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 823-24.

Here, Plaintiff could meet the first *Sapp* factor, as shown by his attempt to file SVSP-L-10-01488, which would have sufficed to exhaust his due process claim. *See id.* However, as explained above, SVSP-L-10-01488 was rejected. Therefore, in order to satisfy the second *Sapp*

14

factor Plaintiff must show that prison officials rejected SVSP-L-10-01488 for reasons inconsistent with applicable regulations. *See Sapp*, 623 F.3d at 823-24. Because Plaintiff did not file an opposition, the Court finds he has failed to present evidence showing SVSP-L-10-01488 was improperly screened out/rejected at the first level of review. Moreover, Plaintiff has presented no evidence showing he attempted either to challenge the rejection of SVSP-L-10-01488 or resubmit it. If Plaintiff had taken steps to challenge the rejection of SVSP-L-10-01488, but the SVSP Appeals Coordinator refused to review his appeal, such evidence might suggest that Plaintiff's failure to exhaust should be excused. As the Ninth Circuit explained in *Sapp*, a proper screening decision does "not foreclose the possibility that exhaustion might also be excused where repeated rejections of an inmate's grievances at the screening stage give rise to a reasonable good faith belief that administrative remedies are effectively unavailable." *Sapp*, 623 F.3d at 826. Such excuse is not available to Plaintiff here, however, as SVSP-L-10-01488 was screened out only once at the first level of review. Further, the first level screening decision informed Plaintiff as to what he needed to do to remedy the situation, and there is no evidence indicating Plaintiff attempted either to challenge that decision. Consequently, as Plaintiff has not presented evidence that he ever responded to the first level screening decision (thereby affording the SVSP Appeals Coordinator an opportunity to reconsider its rejection of Plaintiff's appeal), the Court concludes Plaintiff could not have had a reasonable good faith belief that further administrative remedies were effectively unavailable.

Lastly, as in *Sapp,* nothing in the record suggests that the CDCR has "created draconian procedural requirements that would 'trip[ ] up all but the most skillful prisoners'" and render administrative remedies effectively unavailable, so as to excuse a failure to exhaust. *See Sapp*, 623 F.3d at 827 (citing *Woodford v. Ngo*, 548 U.S. 81, 102 (2006)). Significantly, Defendant has submitted evidence demonstrating Plaintiff has prosecuted appeals through the Director's level of review, both before and after pursuing the appeal at issue herein. *See* Voong Decl., Ex. A.

In sum, the Court concludes that although SVSP-L-10-01488 was screened out at the first level of review, administrative remedies remained available to Plaintiff because (1) the first level screening decision would not lead Plaintiff to hold a reasonable, good-faith belief that further

15

administrative remedies were effectively unavailable, and (2) the CDCR grievance procedure was not so complex as to render further administrative remedies effectively unavailable. *See Sapp*, 623 F.3d at 827. Therefore, the Court finds Plaintiff's failure to exhaust administrative remedies properly is not excused because of improper screening.

Defendant has adequately shown that there were available administrative remedies that Plaintiff did not fully exhaust as to his deliberate indifference to safety claim. Accordingly, Defendant is also entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies, and the motion is GRANTED on this alternate ground as well.

### III. CONCLUSION

For the reasons outlined above, the Court orders as follows:

1. Plaintiff's complaint—alleging his deliberate indifference to safety claim against Defendant—is DISMISSED WITH PREJUDICE as time-barred, and Defendant's motion for summary judgment is GRANTED.[10] Dkt. 21

2. The Clerk shall enter judgment in favor of Defendant, terminate all pending motions, and close the file.

3. This Order terminates Docket No. 21.

IT IS SO ORDERED.

Dated: November 19, 2015

_____
YVONNE GONZALEZ ROGERS
United States District Judge

---

[10] Defendant's motion for summary judgment is also GRANTED on the alternative ground that Plaintiff failed to exhaust administrative remedies as to his deliberate indifference to safety claim against Defendant.

16